Orville LINDSEY *v.* STATE of Arkansas

CR 94-638 890 S.W.2d 584

Supreme Court of Arkansas
Opinion delivered December 19, 1994

*Robert E. Irwin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal is brought from a judgment of conviction for two counts of rape involving a child younger than age 14 for which the appellant, Orville Lindsey, received two life sentences. The victim was Lindsey's daughter, B.L., who was age eight at the time of the offenses. Lindsey raises two points on appeal: (1) the trial court erred in permitting testimony of his daughter's trench foot condition; and (2) the trial court erred in excluding evidence that the victim, B.L., had accused others of raping and sexually molesting her. Neither point warrants a reversal of the judgment, and we, therefore, affirm.

On May 19, 1993, Corporal John Serrette of the Russellville Police Department was dispatched to the home of Roger Dale Mason after being notified of a disturbance there. When he arrived, he found B.L., and after talking to her, it became apparent to him that she was a victim of sexual abuse. B.L. told the police officer that Lindsey had sexually abused her. She was taken to the Russellville Police Department for questioning and then to St. Mary's Hospital in Russellville where she was examined by a pediatrician, Dr. Robin Goodman. B.L.'s hymenal opening was found to be significantly enlarged and in an irregular shape, suggesting repeated penetration. Dr. Goodman also found that she had gonorrhea bacteria in her throat and a severe case of trench foot which results from feet being kept warm, moist, and unclean for a prolonged period of time. Both of B.L.'s feet were afflicted with the condition and were puffy and swollen with peeling skin and inflammation.

Lindsey was arrested on May 21, 1993, and charged with raping B.L. by sexual intercourse and oral sex and with endangering her welfare and the welfare of her six-year-old sister by allowing each to develop the trench foot condition. On the day of the

trial, defense counsel for Lindsey orally moved the trial court to allow the testimony of three proposed witnesses who would testify that B.L. had accused other persons of sexual conduct. Lindsey also sought severance of the endangerment charge for purposes of trial. The trial court severed the endangerment charge but initially reserved judgment on whether evidence of B.L.'s trench foot ailment could come in at the trial of the rape charges. The court made the following ruling:

> I'll grant your motion with respect to a severance of the endangering the welfare of a minor in the second degree. That's on the Amended Information as Count III. So, that charge will not be considered by this Jury in terms of the factual basis for that charge. It may have some relevance under 404(b). What I'd rather do at this time is to deny your request for motion in limine on that aspect. . . . I can envision a situation where it might be relevant. You know, if it is an examination — one or more girls taken to the hospital for examination of the basis of what brings us here today and then that condition in Count III was seen and observed by the treating physicians, that could have a basis of some relevance under 404(b); but I'd rather hear how that comes out. I'm not sure how it would come out; but the actual charge itself, I will sever.

After the trial court made this ruling, defense counsel continued to argue that any proof of trench foot would be highly prejudicial and inflammatory and of no probative value. The trial court reiterated that it might have some relevance on the issue of Lindsey's intent. The prosecutor added that the State intended to introduce proof of B.L.'s trench foot as part of her total condition at the time of the doctor's examination and, hence, it was relevant under Ark. R. Evid. 404(b). Defense counsel countered that this was an effort by the State to prove one crime by proof of another crime. The trial court concluded the discussion by denying Lindsey's motion to exclude testimony of B.L.'s trench foot condition.

On the issue of Lindsey's three proposed witnesses who would testify about B.L.'s prior allegations of sexual conduct, the trial court ruled that this testimony was prohibited by the Rape Shield Act and that Lindsey's request for an exception to

the Act, orally made on the day of the trial, did not comply with the Act's stated procedures.

Trial commenced and, during the State's direct examination of Dr. Robin Goodman, a question was asked about whether the doctor immediately noticed something about B.L. and her younger sister when they were at the hospital.[1] Defense counsel objected, and this exchange ensued at the bench:

Defense Counsel: Your Honor, at this point, I wish to object to this question. He's going to ask about the feet; and I don't think it is relevant at this point.

Prosecutor: Your Honor, it's been testified about seeing it that night. It's the same examination and it will all go into the mix; and I think the Jury is entitled to hear about that.

Defense Counsel: I don't think it has any probative value on the rape at all.

Prosecutor: It's the physical condition of the child and it goes to this man, absence of mistake, and the manner in which this man treated his children.

The Court: I think I've ruled on that on your motion in limine earlier. I'll stand by that ruling. I'll overrule your objection.

Dr. Goodman was then questioned about B.L.'s trench foot malady which the doctor described:

Basically in [B.L.'s] case both of her feet were very swollen. The skin, especially the skin under her toes and up near the balls of her feet were almost white because they were so puffy and swollen. The skin was starting to peel off from around the toes and on the balls of the feet. The surrounding skin was very red which would mean it was very inflamed; and it was very tender when you touched the skin around these areas.

Prior to Dr. Goodman's testimony, Kent Tallent, a Pope-Yell

---

[1]One reference was made by Dr. Goodman to the trench foot condition of B.L.'s sister, but no objection was made by Lindsey, and that issue is not raised on appeal.

County SCAN employee, was called by the State as a witness and testified. Defense counsel explored on cross-examination whether the State Department of Human Services had placed custody of B.L. with Lindsey because he was a fit parent. On redirect examination, the State continued to explore Lindsey's fitness as a parent as did defense counsel on recross-examination.

Lindsey was found guilty by the jury and sentenced to two life terms in prison, to be served concurrently.

## I. RULE 404(b)

Lindsey first contends that the trial court erred in allowing Dr. Goodman to testify about B.L.'s trench foot illness because it was irrelevant to the trial on the rape charges and prejudiced his case. Lindsey further urges that the error was particularly egregious because the trial court had severed the endangerment charge involving B.L.'s case of trench foot for trial. The State counters with several theories: (1) B.L.'s trench foot was part of the *res gestae* of the case; (2) under Ark. R. Evid. 404(b) proof of trench foot was relevant to the issue of Lindsey's intent or tendency to abuse B.L.; and (3) defense counsel opened the door on the issue of whether Lindsey was a fit parent, thereby allowing testimony of B.L.'s trench foot.

We begin with the observation that trial courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Larimore* v. *State*, 317 Ark. 111, 877 S.W.2d 570 (1994); *Terry* v. *State*, 309 Ark. 64, 826 S.W.2d 817 (1992); *State* v. *Massery*, 302 Ark. 447, 790 S.W.2d 175 (1990).

In the instant case, we are dealing with the admissibility of a wrong or act, apart from the specific rape offenses, which involved the neglect of B.L. to such an extent that she developed a severe case of trench foot. As a general proposition, proof of other crimes, wrongs, or acts is not admissible under our Rules of Evidence merely to prove the bad character of the defendant and to show that his actions conformed to that character. Ark. R. Evid. 404(b). Rule 404(b), however, does recognize exceptions to the general rule:

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the char-

acter of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This court has recognized that the list of exceptions to inadmissibility under Rule 404(b) is not an exclusive list but rather represents examples of the types of circumstances where evidence of other crimes or wrongs or acts would be relevant and admissible. *Thrash* v. *State*, 291 Ark. 575, 726 S.W.2d 283 (1987); *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986); *see also Strong, McCormick on Evidence*, § 190, p. 345 (4th Ed. 1992).

We have further made it clear that if the introduction of testimony of other crimes, wrongs, or acts is "independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court." *White* v. *State*, 290 Ark. 130, 140, 717 S.W.2d 784, 789 (1986), quoting *Alford* v. *State*, 223 Ark. 330, 334, 266 S.W.2d 804, 806 (1954); *see also Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980). Thus, if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. *Sullivan* v. *State*, 289 Ark. 323, 711 S.W.2d 469 (1986). In *White* v. *State, supra*, we concluded that the trial court correctly ruled that the testimony regarding a prior beating of the victim, his wife, was admissible to show a specific propensity to beat that person. It was, therefore, probative of the defendant's participation in his wife's murder. We further observed that the appellant had been entitled to a cautionary instruction limiting the use of this evidence, yet failed to ask for one. Because the appellant in *White* failed to ask for a cautionary instruction, we held that he could not claim error on appeal.

Lindsey also failed to ask for a limiting instruction in the instant case that the proof of trench foot could only be considered as relevant behavior in connection with the rape offenses and not merely as proof of his general bad character.

Under our decision in *White* v. *State, supra,* this failure forecloses a claim of error on appeal. *See also* Ark. R. Evid. 105. No doubt, Lindsey did not ask for this limiting instruction because he did not believe the trench foot evidence to be relevant for any purpose. We disagree, however, and choose to address the Rule 404(b) issue. We have no hesitancy in concluding that permitting an eight-year-old child to develop a severe case of trench foot is a form of neglect by the parent and that the neglect of a child's physical needs is necessarily a form of abuse. Hence, we believe that a father's perpetration of child abuse by neglect is relevant to a case of sexual abuse against that same child, when both forms of abuse are occurring at the same time. Such evidence is pertinent in that it establishes an intentional pattern of abusive behavior on the part of the parent toward the child — the first by neglecting her basic hygienic needs and the second by soliciting her to engage in sexual activity. A contemptible lack of caring for a child's essential healthcare needs easily intertwines with sexual abuse of the child. Both forms of abuse are intentional and evidence lack of care, concern, and respect for the child's well-being.

In considering crimes, wrongs, and acts in a Rule 404(b) analysis in 1991, this court has further stated:

> We have long held that all of the circumstances connected with a particular crime may be shown, even if those circumstances would constitute a separate crime.

*Collins* v. *State*, 304 Ark. 587, 591, 804 S.W.2d 680, 682 (1991); *see also Wilson* v. *State*, 298 Ark. 608, 770 S.W.2d 123 (1989); *Thomas* v. *State*, 273 Ark. 50, 615 S.W.2d 361 (1981). To have withheld from the jury the child's obvious and total physical condition at the time of Lindsey's arrest would have deprived them of the full circumstances surrounding the crime and the abuse perpetrated. Thus, we hold that proof of the trench foot condition as evidence of Lindsey's abuse by neglect was relevant to the charge of rape of the child under Rule 404(b).

The next question is whether, though relevant under Rule 404(b), the probative value of the trench foot condition was substantially outweighed by the danger of unfair prejudice and, thus, inadmissible under Ark. R. Evid. 403. There is no doubt that such proof of abuse by neglect would have an adverse impact on

Lindsey at trial, but we do not believe that *unfair* prejudice occurred. This is not a case where Lindsey was on trial for rape, and evidence of an unrelated murder occurring a year earlier and involving a different victim was offered. Here, the victim was the same person — his daughter, B.L. Both the trench foot condition and the rapes occurred in the same time period. Furthermore, a parent/child relationship existed between the malefactor and the victim. We cannot say that Lindsey was unfairly prejudiced by this testimony.

In addition, we do not view the fact that the trial court severed the endangerment charge for trial to be conclusive of whether Dr. Goodman could describe the girl's physical condition at the time of his examination under Rule 404(b). To be sure, severance may be granted where two offenses are not part of a single scheme or plan. *See* Ark. R. Crim. P. 22.2(a). Recently, we reversed a judgment of conviction of rape where severance of five rape counts was appropriate and had not been granted by the trial court. *See Clay* v. *State*, 318 Ark. 550, 886 S.W.2d 608 (1994). We did so because the five rape counts involved alleged rapes of five separate victims at different locations outside of the defendant's home over a twelve-month period. The analysis under Rule 404(b), however, is different because the options for determining relevance are much broader. As already stated, the Rule 404(b) exceptions go beyond a plan or scheme and include any independently relevant proof such as motive, opportunity, intent, absence of mistake, and other categories. Moreover, this list of exceptions is not all-inclusive. There may be other examples where the proof offered is independently probative. The focal point of a Rule 404(b) analysis is whether the proof of the other crime, wrong, or act is relevant, not whether it was part of a single plan or scheme. In this instance, the trial court correctly concluded that B.L.'s trench foot condition was relevant proof of the crimes charged.

Though we decide this point as a Rule 404(b) exception, defense counsel also opened the door to testimony of Lindsey's fitness as a parent by his cross-examination of Kent Tallent, the Pope-Yell County SCAN employee. We agree with the State that defense counsel's suggestion that Lindsey was a fit parent afforded the State the opportunity to rebut this with proof of the child's actual physical condition while living with her father.

*See, e.g., McFadden* v. *State,* 290 Ark. 177, 717 S.W.2d 812 (1986); *Pursley* v. *Price,* 283 Ark. 33, 670 S.W.2d 448 (1984). In *McFadden,* we held that proof of bad character, even when inadmissible under Rule 404(b), becomes admissible when a party opens the door by eliciting evidence of good character.

## II. RAPE SHIELD ACT

 Lindsey next maintains that the trial court erred in disallowing evidence of B.L.'s prior allegations of sexual abuse. The trial court ruled that the Rape Shield Act, codified at Ark. Code Ann. § 16-42-101 (Repl. 1994), applied to these allegations. We decline to reach this issue for the simple reason that no written motion was filed by Lindsey on this point as required by § 16-42-101(c)(1). *See Laughlin* v. *State,* 316 Ark. 489, 872 S.W.2d 848 (1994). Moreover, there was no proffer of testimony made by Lindsey, and it is, therefore, impossible for this court to know the nature of the accusations made, against whom they were made, and under what circumstances they were made. *See Byrum* v. *State,* 318 Ark. 87, 884 S.W.2d 248 (1994); *Gaines* v. *State,* 313 Ark. 561, 855 S.W.2d 956 (1993). It is the duty of the appellant to present a record of the case sufficient for our review of the point raised. *See Stewart* v. *State,* 316 Ark. 153, 870 S.W.2d 752 (1994). This Lindsey failed to do.[2]

We have reviewed the record in this case for other reversible error in accordance with Ark. Sup. Ct. R. 4-3(h) and have found none.

Affirmed.

HOLT, C.J., and DUDLEY and NEWBERN, JJ., dissent.

HAYS, J., concurs.

STEELE HAYS, Justice, concurring. I have some difficulty connecting the evidence of trench foot to whether the appellant was guilty of raping his nine-year-old daughter. However, for a number of reasons, I concur in the majority opinion. For one thing, the evidence strongly preponderates on the side of guilt.

---

[2]Act 934 of 1993 amended the Rape Shield Statute to include allegations of sexual conduct by the victim, but Act 934 became effective after the dates of the rape offenses.

The enlarged and misshapen vagina of the victim showed telling signs of frequent penetration. The presence of gonorrhea bacteria in her throat reenforces that conclusion. The child herself made a credible witness and the examining physician testified repeatedly that there was no doubt that she had been sexually abused. In short, I am not persuaded there is any likelihood that the jury convicted the appellant based on evidence of trench foot rather than on the evidence of sexual abuse.

DAVID NEWBERN, Justice, dissenting. The thesis of the plurality opinion is that: (1) the evidence that Mr. Lindsey allowed his daughter to develop trenchfoot is evidence of abuse; (2) evidence that Mr. Lindsey raped his daughter is evidence of abuse; (3) evidence with respect to the trenchfoot charge is relevant to the rape charge because it shows a propensity on the part of Mr. Lindsey to abuse his child. That is precisely what is prohibited by Ark. R. Evid. 404(b). It is the result sought to be prevented by Ark. R. Crim P. 22.2(a) which gives a defendant the right to a severance when two offenses are joined for trial solely on the ground that they are of the same or similar character.

Prior to the advent of modern joinder and severance rules, based on the ABA Standard cited below, the courts struggled with the issue of prejudice in a single prosecution of multiple offenses. The long since discredited "simple and distinct" rule attributed to Judge Learned Hand dealt only with the question whether jurors would be confused by evidence of more than one offense being presented. We have come a long way. M. Berger, Other Crimes Evidence: A Unified Approach to Severance and Admissibility, 45 Brooklyn L. Rev. 1117 (1979). The problem is solved by the two rules cited above.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The plurality opinion mercifully does not attempt to show that one of the examples used in the rule was present in this case.

It depends on the general "other purposes" language of the rule. The instances in which we have gone beyond the examples stated in the rule are those in which there is evidence of multiple sex offenses.

In *Clay* v. *State*, 318 Ark. 550, 886 S.W.2d 608 (1994), we held that five alleged sex offenses, charged against Mr. Clay, each involving a separate, unrelated young woman, were improperly joined. We recognized that we have been liberal in permitting the joinder of sex offenses when they involved repeated offenses against the same child or occurred in one household. *See Free* v. *State*, 293 Ark. 65, 732 S.W.2d 452 (1987) (showing a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship).

The questionably liberal approach with respect to joinder of sex offenses is nothing new. It was discussed thoroughly in Slough & Knightly, "Other Vices, Other Crimes," 41 Iowa L. Rev. 325, 333-334 (1956), quoted in 2 Weinstein's Evidence, p. 404-80 (1988). It has, however, to do only with joinder of sex offenses, based upon a supposed irresistible and warped biological instinct, and not joinder of sex offenses and other offenses.

In *Clay* v. *State, supra,* we cemented the relationship in this jurisdiction between Rule 404(b) and Ark. R. Crim. P. 22.2(a). We cited the Commentary to § 2.2(a) of the ABA Standards Relating to Joinder and Severance, Approved Draft and pointed out that if an accused were prosecuted separately on each charge as to which he had the right of severance, the evidence of the other crime(s) would not be admissible under Rule 404(b).

To say evidence that Mr. Lindsey was guilty of endangering the health of his child by allowing her to contract trenchfoot is relevant to the charge that he raped her can only be based upon the contention that it demonstrates he is a bad man, a person of bad character, or a person with a propensity to commit one crime because he has committed another. The dissenting opinion in *Clay* v. *State, supra,* argued that joinder should have been allowed because under Rule 404(b) the evidence of each of the separate sex offenses would have been admissible in each of the other cases because it showed the "propensity" to commit the crime. Again, that is what the rule disallows.

It makes no sense to give a criminal defendant the absolute right to sever offenses in order to prevent jurors from being unduly influenced by evidence of the commission of crime "A" in the consideration whether the defendant was guilty of crime "B" and then to allow evidence, in the prosecution of crime "B," that the defendant committed crime "A."

Mr. Lindsey did not open the door to character evidence. Here is how the testimony in question appears in the record:

BY MR. IRWIN [Defense Counsel]:

Q. Mr. Tallent [County SCAN Director], did you discover that a court in this state had placed these children with Mr. Orville Lindsey?

A. Excuse me?

Q. Did you discover that a court in the State of Arkansas had placed these children in the custody of Mr. Lindsey?

A. I had been told by Mr. Lindsey and Mrs. Lindsey in an interview that they had custody of the children.

Q. So, that's how you know it?

A. Yes, sir.

Q. What about the mother of these children? Did she tell you they were taken from her by a court and put with Mr. Lindsey?

A. I believe that's what she said that he had custody of her or of the children.

Q. But — and put in there by a court?

A. Yes, sir.

Q. And, when that happens does the court determine whether or not a person is a fit parent?

A. I don't really know the proceedings of the Chancery Court. I assume that that is one of their concerns.

Q. All right.

BY MR. IRWIN: That's all.

## RE-DIRECT EXAMINATION

BY MR. KENNEDY [Prosecutor]:

Q. When custody is removed through the process you've just described is that by court order?

A. Yes, sir, that's the only way it can be.

Q. Before custody is taken from a natural parent and placed with the Department of Human Services is there an adjudication that the natural parent is not a fit parent?

BY MR. IRWIN: I object, Your Honor. That's not the only reason. In this particular case the father was in jail.

BY MR. KENNEDY: Your Honor, he opened the door.

BY THE COURT: That's — that doesn't state an objection.

BY MR. IRWIN: I objected.

BY THE COURT: That's something you can bring out by argument or examination of the witness.

BY MR. IRWIN: All right. I'll just ask him.

BY THE COURT: Go ahead.

A. Would you repeat your question, please sir?

Q. Before custody is placed in the Department of Human Services is there a necessity of an adjudication that the natural parent or custodial parent is not a fit parent?

A. Yes, sir.

BY MR. KENNEDY: Nothing further.

## RECROSS EXAMINATION

BY MR. IRWIN:

Q. Now, are you telling the Court that in this case there was an adjudication in this case that this man was not a fit parent or simply that he was in jail and couldn't take care

of the child? You had — you had a —you had a child service case protective order for the children, did you not?

A. We also have an adjudication order date June 29th of 1993, that specifically states that the Court — number four, the Court finds that [the children] are dependent-neglected as defined in the Arkansas Juvenile Code and that the allegations in the petition are true and correct.

Q. Yes, sir; and the definition of dependent-neglected in this particular situation was that their mother didn't have them and the father was in jail and there wasn't anybody to take care of them, was there?

A. No, sir. The reason that the children were found dependent-neglected was because of the sexual abuse allegations.

Q. Oh, that's what that —

A. Yes, sir.

Q. — was, the allegations?

A. Yes, sir.

Q. That's what we are trying today to see whether it's true or not?

A. I assume so.

Q. Okay.

The initial questions asked by Mr. Lindsey's counsel went to the placement of custody of the child with Mr. Lindsey rather than his wife. The first reference to fitness as a parent came with the question, "And, when that happens does the court determine whether or not a person is a fit parent?" The term "a person" in the context of the question could have referred to either parent; more particularly it could have referred to a determination that the child's mother was unfit. The remainder of the questions by both parties had to do with removal of the child from Mr. Lindsey. In that series he was clearly on the defensive, attempting to show that the court had not determined him to be an "unfit parent" which is a far cry from presenting evidence of his good character. No door was opened.

Under our rules, Mr. Lindsey is entitled to be tried for one crime at a time.

I respectfully dissent.

HOLT, C.J., and DUDLEY, J., join in this dissent.