Joe PARISH *v.* STATE of Arkansas

CR 03-1358

163 S.W.3d 843

Supreme Court of Arkansas
Opinion delivered April 29, 2004

*Jack T. Lassiter*, for appellant.

Mike Beebe, Att'y Gen., by: *Jeffrey A. Webber*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. This appeal arises from the conviction and sentence of appellant, Joe Parish, in Cleburne County Circuit Court for the rape of his daughter, N.P. Initially, appellant was charged with two counts of violating Ark. Code Ann. § 5-14-103 (Repl. 1997), a class Y felony, for the rape of his daughter and his daughter's friend, A.H. A jury convicted him on the first count and sentenced him to ten years' imprisonment. A mistrial was declared on the second count involving A.H., and a new trial date was set in that case. On appeal, he argues that the trial court erred in denying his motion to sever the two offenses and in denying his rape-shield motion. We affirm the trial court's rulings.

Appellant does not challenge the sufficiency of the evidence, but we will give a recitation of the pertinent facts in this case. On September 4, 2002, N.P., who was fifteen years old at the time, gave a statement to Detective Jack Allen with the Cleburne County Sheriff's Department that appellant had been sexually abusing her for as long as she could remember. She told the detective that appellant put his hands under her clothes, fondled her, and penetrated her vagina with his finger. He would force her to sleep in his bed before his girlfriend came home, and at times,

attempted to force her to perform oral sex, which she refused to do. She claimed that she wanted to make this statement because she was fearful of what appellant might do to her younger sister.

N.P.'s younger sister, A.P., told the detective that appellant had been sexually abusing her sister and that he was "touching [N.P.] where she didn't want to be touched." She also stated that appellant called N.P. a "whore" because she had a boyfriend. A.P. conveyed to the detective that she was fearful of her father.

Appellant told Detective Allen that N.P. was lying because she was mad at him for not letting her see her boyfriend.

The second victim, A.H., reported to an investigator with the Arkansas State Police that on March 16; 2002, she spent the night with N.P. She said that appellant came into the room during the night, took off her shorts, fondled her, and had sexual intercourse with her. A.H. told appellant that he was hurting her.

A.H.'s brother, B.H., told the investigator that A.H. had been acting "strange." Her parents stated that they noticed a behavior change in A.H. and that she expressed that she did not want to visit N.P. again. A.H. told her parents when N.P.'s mother told them that N.P. came forward with her story.

On September 19, 2002, appellant was charged by felony information with two counts of the rape of N.P. and A.H., respectively.

On April 22, 2003, appellant filed a motion to sever, pursuant to Ark. R. Crim. P. 22.2, alleging that the two counts of rape involved two separate victims and that the factual allegations of each count were not part of a single scheme or plan, and that the trial should be severed because they were not of a similar character. The State filed a response, arguing that (1) each victim's testimony will be admissible in the other trial to show appellant's intent, motive, common scheme, or plan under Ark. R. Evid. 404(b); (2) the alleged acts and the manner of those acts were remarkably similar and overlapped in time; (3) appellant gained access to one victim solely through the relationship with the other victim; and (4) the witnesses for both trials are identical and would require to put on identical proof in two trials, thus making it unduly burdensome on the State. These arguments were made before the trial court at a pre-trial hearing on July 16, 2003, and on July 23, 2004, the trial court denied appellant's motion to sever on the basis

that an exception to Rule 22.2 is that evidence proving plan, scheme, motive, or state of mind is admissible under Ark. R. Evid. 404(b).

Additionally, appellant filed a notice pursuant to the rape-shield statute, found at Ark. Code Ann. § 16-42-101 (Repl. 1999), that appellant intended to call two witnesses, T.P. and Patty Bruno, to testify to the N.P.'s sexual relations with her former stepfather, Franklin Martin, for the purposes of impeaching the testimony of N.P. The factual background behind this notice is that after N.P.'s parents were divorced, her mother, Marie Parish, then in her thirties, married Franklin Martin, an eighteen-year-old. N.P. allegedly told her cousin, T.P., that she had sexual relations with Mr. Martin. At trial, the State argued that this evidence was irrelevant and asserted the rape-shield statute. The defense proffered the testimony of these two witnesses, and the trial court denied appellant's motion to present this evidence.

At trial, N.P. testified that appellant began molesting her at the time she was four or five until she was twelve. She testified that appellant would put his hands under her clothes and penetrate her vagina with his finger. According to N.P., when she reached the age of twelve, she would try to make him stop. N.P. further testified that her parents got a divorce, and appellant continued the sexual abuse by fondling her and digitally penetrating her. She stated that the abuse continued for about a year after her parents divorced in 1998. In 2002, she reported appellant after confiding to her boyfriend about the repeated molestation. At that point, she realized that appellant might have abused her sister. N.P. testified that she told her mother, who took her to the police. A.P., N.P.'s sister, testified at trial that she remembered that, on two occasions, her dad would get N.P. and take her into his bedroom.

A.H. also testified at trial. She testified that she was N.P.'s friend and that she had visited N.P.'s house on several occasions. A.H. testified that while she was staying overnight at N.P.'s house in 2002, she woke up in the middle of the night with appellant on top of her. She testified that he raped her. Additionally, A.H.'s mother testified A.H.'s demeanor changed when A.H. learned that appellant was going to be her softball coach.

The State called four other witnesses. D.H., a friend of the two victims, testified that both girls confided in her about appellant's actions toward them. Carnesha Price, appellant's former girlfriend with whom he has one child, who testified that she

began her relationship with appellant when she was seventeen. Another witness, J.W., testified that appellant forced her to have sex with him when she was thirteen years old. J.W.'s mother also testifed about her daughter's experience.

Appellant testified that the problems with N.P. started when she started her relationship with her boyfriend. He denied raping N.P, stating, "I never harmed neither one of my girls. . . . That's a lie[.]"

The jury convicted appellant on the first count of rape, which involved N.P., and sentenced him to ten years in the Arkansas Department of Correction. On appeal, he makes two allegations of error. First, he argues that the trial court erred in denying his motion for severance, and second, he argues that the trial court erred in sustaining the State's objection to the admissibility of two witnesses' testimony based upon the rape-shield statute.

For his first point on appeal, appellant argues that the trial court erred in denying his motion for severance under Ark. R. Crim. P. 22.2. Citing *Clay v. State*, 318 Ark. 550, 886 S.W.2d 608 (1994), he contends that the trial court should have granted severance because the two rapes did not involve a single scheme or plan because one was by digital penetration and one was by forcible compulsion. He further argues that the motion to sever should have been granted because the two rapes "were separated by a lengthy period of time" and that "[t]here is a substantial time gap between the allegations in count one and those in count two."

 Rule 22.2, which involves the severance of offenses, provides:

(a) Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of offenses:

(I) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

(ii) if during trial, upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

Ark. R. Crim. P. 22.2. A trial court has discretion to grant or deny a severance, and on appeal we will not disturb the ruling absent an abuse of discretion. *See Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999); *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *McDaniel v. State*, 278 Ark. 631, 648 S.W.2d 57 (1983).

In considering appellant's motion to sever, the trial court based its ruling on Ark. R. Evid. 404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Id.*

■ ■ When the charge concerns the sexual abuse of children, we have held that evidence of sexual abuse with children other than the victim is admissible to show motive, intent or plan pursuant to Ark. R. Evid. 404(b). *Richardson v. State*, 314 Ark. 512, 63 S.W.2d 572 (1993). This exception to Rule 404(b) is known as the "pedophile exception," which provides:

When the alleged crime is child abuse or incest, we have approved allowing evidence of similar acts with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship.

*Taylor v. State*, 334 Ark. 339, 349, 974 S.W.2d 454, 460 (1998); *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996); *see also Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998); *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994).

■ ■ Further, it is admissible to show the familiarity of the parties and antecedent conduct toward one another and to corroborate the testimony of the victim. *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987). Such evidence helps to show the depraved sexual instinct of the accused. *Hernandez v. State*, 331 Ark. 301, 962

S.W.2d 756 (1998). The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Munson, supra.*

At issue is whether the trial court erred in denying appellant's motion to sever by relying more heavily upon Rule 404(b), rather than Rule 22.2, in its ruling. We explained the interplay between Rule 22.2 and Rule 404(b) in *Lindsey v. State,* 319 Ark. 132, 890 S.W.2d 584 (1994) (plurality opinion):

> To be sure, severance may be granted where two offenses are not part of a single scheme or plan. See Ark. R. Crim. P. 22.2(a). . . . The analysis under Rule 404(b), however, is different because the options for determining relevance are much broader. As already stated, the Rule 404(b) exceptions go beyond a plan or scheme and include any independently relevant proof such as motive, opportunity, intent, absence of mistake, and other categories. Moreover, this list of exceptions is not all-inclusive. There may be other examples where the proof offered is independently probative. *The focal point of a Rule 404(b) analysis is whether the proof of the other crime, wrong, or act is relevant, not whether it was part of a single plan or scheme.*

*Lindsey, supra* (emphasis added). *See also Dillard v. State,* 333 Ark. 418, 917 S.W.2d 764 (1998) (holding that evidence of the defendant's intimate relationship with the victims, as well as the similarity of the manner and time frame of the commission of the sexual-abuse offenses established that evidence from each victim supported the trial court's denial of appellant's motion to sever).

Thus, under *Lindsey, supra,* relevancy becomes the focal point of our inquiry. In order to determine relevancy, we look to several factors to determine the probativeness of evidence of a prior crime. *Hernandez, supra.* In *Hernandez,* we primarily looked to three factors to determine relevancy: (1) whether there was a time interval between the crimes, (2) whether there was a similarity of the acts, and (3) whether there was an intimate relationship between the victim and the perpetrator. *Id.* In *Hernandez,* we also looked to subsequent conduct after the crime against a child. *Id.*

First, we examine the time interval between the crimes. In pedophile-exception cases, we have admitted evidence of another crime that occurred over a year prior or subsequent to the crime. *Id.; see also Douthitt, supra* (refusing to sever rape counts

that occurred from 1989 to 1994); *Mosley, supra* (affirming admittance of proof that the appellant had pleaded guilty to carnal abuse eleven years before charges of rape and incest).

■ Here, according to the felony information, appellant was charged with one count of rape of his daughter, N.P., that occurred in 1998 and with one count of rape his daughter's friend, A.H., that occurred in January or February of 2002. These events occurred four years apart. However, N.P. testified that the molestation began when she was four or five years old and continued for about a year after her parents divorced in 1998 when she was approximately fifteen. According to N.P., appellant molested her over one hundred times. Because the crimes against N.P. continuously occurred for ten years until 1999 or 2000, and the crime against A.H. occurred in 2002, we cannot say that the passage of time between the abuse of the two victims is too lengthy to consider. *See Douthitt, supra.* Thus, the time-interval factor is satisfied.

■ Second, we look to any similarity of the acts. Appellant argues that his motion to sever should have been granted because his abuse of the two victims were not sufficiently similar to be probative. He concludes that we should hold the trial court was in error because N.P. was digitally raped while A.H. alleged rape by forcible compulsion. We refuse to make such a distinction in sex crimes against children. In both cases, appellant sought out the girls when no one else was around, forced himself on them, and raped them. In this respect, the acts are strikingly similar.

■■ Third, we determine whether there was an intimate relationship between the victim and the perpetrator. We have noted that the misnomer, "intimate relationship," does not necessarily require that the child live in the home of the accused. *Id.* We have defined an "intimate relationship," for lack of a better phrase, as close in friendship or acquaintance, familiar, near, or confidential. *Id. (citing Black's Law Dictionary* 821 (6th ed. 1990)). We have admitted the testimony of a child living in the same household or staying as an overnight guest in the perpetrator's home. *Hernandez, supra.* We further have admitted evidence against a perpetrator who babysat a child, *see Greenlee v. State,* 318 Ark. 191, 884 S.W.2d 947 (1994), or who gained access to the child. *See Dillard, supra.*

Here, N.P. is appellant's daughter, and although A.H. is not related to appellant, she stayed overnight in appellant's home, where she was raped. Because both victims were abused in appellant's home, we conclude that the intimate-relationship factor is satisfied to admit these victims' testimony in the same trial. Therefore, the three factors to determine relevancy are satisfied.

We further note that appellant's reliance upon *Clay, supra*, is unavailing. In *Clay*, we held that the trial court erred in denying a motion to sever five alleged sex offenses against minor girls. *Id.* We concluded that there was no overall proof of intent, plan, or lack of mistake because the offenses involved different charges that required different mental states, were committed in different manners, were against different victims, at different locations. *Id.* Clay was seventeen at the time these offenses occurred, and the victims were three to five years younger than he, and we concluded that Clay did not meet the criteria established in pedophile cases. We stated:

> The unconnected crimes charged in this case do not involve the same child or other children in the same household, and they do not show that type of "depraved sexual instinct" evidenced by a sixty-year-old man who commits a sexual offense against a seven-year-old boy or girl. Here, a seventeen- or eighteen-year-old man was accused of committing five unconnected sexual assaults against five different girls from three to five years younger than he.

*Id.*

In *Clay, supra*, we emphasized the "single scheme or plan" language of Rule 22.2 instead of focusing on relevancy under Rule 404(b), pursuant to *Lindsey, supra* and its progeny. Moreover, in *Clay, supra*, we emphasized the young age of the appellant, who was not in any supervisory capacity with these girls. However, in the present case, appellant is a thirty-seven-year-old man who repeatedly raped his daughter and raped her friend while both were in his care. Based upon the foregoing analysis, appellant meets the criteria for relevancy in our pedophile-exception cases. For these reasons, *Clay, supra* is distinguishable, and appellant's argument on this point fails.

Thus, we conclude that such evidence would be independently admissible under Rule 404(b). Because each victim's testimony would be admissible in the trial of the other to

show appellant's intent, motive, or common scheme or plan, the trial court did not abuse its discretion in refusing to sever the two cases. *See Lukach v. State*, 310 Ark. 119, 123, 835 S.W.2d 852, 854-55 (1992) (holding that the trial court did not abuse its discretion in refusing a motion to sever separate charges of rape committed against the appellant's two nieces). Accordingly, we affirm the trial court on this point.

For his second point on appeal, appellant argues that the trial court erred by denying his rape-shield motion. At issue was the testimony of T.P., N.P.'s cousin to whom N.P. confided about a relationship Franklin Martin, N.P.'s stepfather, and N.P.

The rape-shield law provides for the exclusion of evidence of any kind about the victim's prior sexual conduct. Arkansas Code Annotated § 16-42-101(b) provides:

> (b) In any criminal prosecution under § 5-14-101 *et seq.* or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Ark. Code Ann. § 16-42-101(b).

 We have interpreted the phrase, "prior sexual conduct," in the rape-shield statute broadly so that it encompasses sexual conduct that occurs prior to trial, not just conduct occurring prior to the time of the alleged rape. *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003); *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002); *Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994). The purpose of the statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and

the public when such conduct is irrelevant to the defendant's guilt. *State v. Babbs*, 334 Ark. 105, 971 S.W.2d 774 (1998); *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997). Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *Graydon, supra.*

In the present case, appellant sought to introduce evidence about N.P.'s alleged sexual relationship with her former stepfather, Franklin Martin, for the purpose of impeaching N.P. Appellant proffered the testimony of N.P.'s cousin, T.P., and Patti Bruno, a woman who lived with N.P., her sister, her mother, and Mr. Franklin. At the rape-shield hearing, T.P. testified that she and N.P. were best friends when N.P.'s mother married Mr. Martin. T.P. also testified that N.P. said that she and Mr. Martin had sex when her mother was out of the house. She further testified that she did not have any knowledge of appellant having an inappropriate relationship with N.P.

Patti Bruno testified that she and her family lived with N.P., her sister, her mother, and Mr. Martin in Ms. Bruno's father's home for a short time in 1998. Ms. Bruno was Mr. Martin's sister-in-law. Ms. Bruno testified that she confronted N.P., who was eleven or twelve years old at the time, about having a sexual relationship with Mr. Martin and that N.P. confirmed that she was sexually involved with him and that they loved each other. Ms. Bruno testified that N.P. never mentioned anything involving her father.

With regard to the testimony of these two witnesses, the trial court stated:

> Well, although minimally relevant to the issue of credibility, the court finds that the prejudice substantially outweighs the probative value, and the defendant's motion will be denied.

Under these circumstances, we cannot say that the trial court abused its discretion in denying appellant's motion. Any proffered testimony relating to the alleged relationship between N.P. and Mr. Martin had no bearing on the rape charges against appellant. The fact that N.P., who was eleven or twelve years old at the time, did not disclose to her boyfriend that her father raped her, when recounting the details of her involvement with her eighteen-year-old stepfather, does not factor into her credibility. Here, the proffered testimony would have prejudiced the jury to

question N.P.'s reputation, which is exactly what the rape-shield statute prohibits. Under *Babbs, supra*, this evidence does not point to appellant's guilt or innocence. For these reasons, we affirm the trial court in denying the admissibility of this evidence.

Affirm.