ROBERT J. GLADWIN, Judge
After a jury trial in the Johnson County Circuit Court, Jacob Robert Dolson was convicted on three counts of rape and sentenced to forty years' imprisonment. On appeal, Dolson contends that the circuit court abused its discretion by admitting evidence in violation of Arkansas Rules of Evidence 403 and 404 (2017). We affirm.
*901 I. Facts
In 2015, Dolson lived with Trinity Barnes, their child, and her three other children. In June, a maintenance man reported unsanitary conditions in the house where Dolson, Barnes, and the children were living. He also reported that he had witnessed children locked in a bedroom in the house. Both Dolson and Barnes admitted to police that they had locked the children in the room for punishment. The Arkansas Department of Human Services (DHS) removed the children from the residence. While they were in foster care, two of Barnes's children disclosed to foster parents the sexual and physical abuse by Dolson that they had suffered. Dolson was charged on September 14, 2016, with four counts of rape, Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2013).[1]
Before the jury trial held on August 11, 2017, the State filed a notice of intent to use Rule 404(b) evidence of the children's having been locked inside a bedroom that contained a urine-soaked mattress. Testimony would also include that the bedroom windows had been closed; the air conditioning was turned off; and the children had been taken into DHS custody when the deplorable conditions of the home were discovered. The State alleged that the evidence of the home's condition at the time the sexual abuse occurred would establish Dolson's complete disregard for the well-being of the children. The State relied on Lindsey v. State , 319 Ark. 132, 139, 890 S.W.2d 584, 588 (1994), wherein evidence that established an intentional pattern of abusive behavior was admitted.
Dolson filed a contradicting motion in limine to exclude the Rule 404(b) evidence. He argued that he and Barnes had pled guilty to a misdemeanor in connection with the children's being taken into DHS custody on June 22, 2015. He claimed that introduction of the evidence would violate Rule 404(a) because it would only tend to prove bad character. Dolson further argued that the evidence would violate Rule 403 because it was not sufficiently probative to outweigh the unfair prejudice to him. Finally, Dolson argued that Lindsey , supra , was distinguishable from his case.
At the pretrial hearing on these motions, Dolson's counsel argued that the bad conditions in the house were not relevant. He claimed that the evidence would serve only to inflame the jury and that it had nothing to do with the elements of rape that had to be proved. Defense counsel urged that the dissent in Lindsey, supra , should be followed and that evidence of the "nasty" house would not help the jury determine whether rape of the children had occurred. Defense counsel also claimed that Lindsey could be distinguished because Dolson was not the father of the alleged victims, whereas the father had been the perpetrator in Lindsey .
The State responded that Dolson's written statement said, "We lock the children in the room because they're bad." Further, Dolson had indicated in his interview with the sheriff that he had locked the children in a room a couple of times. When questioned by the court about whether the State could establish a pattern, the State responded that it could establish that there were deplorable conditions in the house during the time period that it alleged the sexual abuse had taken place. The circuit court granted the State's motion to allow the evidence. During the trial, witnesses testified regarding the conditions of the house and Dolson's admission that he had locked the children in their room for punishment.
*902 TB testified that he was eight years old and that when he had lived with Dolson and his birth mother, if there was any food and Dolson was there, Dolson "made me do something gross." He said that Dolson "touched me with his pee-pee [penis] in my mouth, every morning." TB said, "I can tell you that he was standing up, and I would be with him in my sisters' room, after they moved in with me. I remember that he put his hand on my head and push[ed] it against himself." TB identified Dolson in the courtroom.
Seven-year-old EB testified that Dolson had touched her "where it wasn't okay." She asked the prosecutor to show her the anatomically correct picture of a boy. She said,
I can show you that he touched me with his pee-pee when my clothes were off. I saw him put something on his pee-pee. I saw a plastic, yucky thing. I can't tell you why he did that, he did not tell me, but he would always put that on. I saw something come out of his pee-pee. Yes, I agree that it was like gel or some white juice. I can tell you I saw that happen once. I would be laying down on his bed and he would put his pee-pee in my bottom. I did have to put part of my body on his pee-pee, my mouth. I say it happened a lot of times. I am telling you that he put the plastic thing on his pee-pee when he put it in my bottom, and I am telling you that he did not put on the plastic thing when he put it in my mouth.
Ruth Dudding, a nurse at the Child Safety Center in Fort Smith, testified that she had conducted a forensic examination of TB and EB and found no evidence of acute or penetrating trauma. She said that the majority of children who have been sexually abused do not have definitive findings or have injury to the anal or genital area.
Dolson moved for a directed verdict at the conclusion of the State's evidence and renewed his motion concerning the State's use of evidence under Rule 404(b). The circuit court denied the motions.
Dolson's mother testified that she believed TB was not truthful. She said that after Dolson and Barnes had moved, she would pick up the children for church and see that their house was a mess. She stated that a messy house does not make a sex offender. Andrew Dolson stated that he is Dolson's younger brother and that he had lived next door to Dolson in June 2015. He said that TB was not truthful.
Appellant Dolson testified that he worked both the day and night shifts for Walmart Neighborhood Market. He said that his schedule had kept him away from the house a lot when the children had been there. He said that the house got "so nasty" because he and Barnes had split the responsibilities and that Barnes had been on drugs. He said that he had a "hard" relationship with TB, giving as an example a time when he had scratched TB while sword fighting with him. He said that TB told his teacher about it, and a DHS worker came to their house to investigate. Dolson denied the sexual-abuse allegations. He said that he would punish the children by putting them in a corner or by locking them in their bedroom for five minutes at a time. He said that he had lied to law enforcement when he told them he had routinely locked the children in their room. He said that he was not the children's father, that he had not married their mother, and he had not adopted them or obtained a guardianship over them. He testified that he was not aware of any legal duty he owed the children but said he had financially supported them. He said that he and Barnes had locked the cabinets because the children were wasting all the food. He also said that they had begun *903 locking the children in the room in April 2015. He claimed that TB had been in trouble a lot because he lied and that TB and EB were not truthful.
Dolson renewed his motion for directed verdict and his objection to the Rule 404(b) evidence. He asked for a jury instruction related to that evidence. The circuit court granted the instruction and denied the motion for directed verdict. The instruction was read to the jury as follows:
Members of the jury, you are instructed that evidence of other wrongs or acts of Jacob Dolson may not be considered by you to prove the character of the Defendant-in order to show-may not be considered by you to prove the character of the Defendant, Jacob Dolson, in order to show that he acted in conformity therewith. This evidence is not to be considered to establish a particular trait of character that he may have, nor is it to be considered to show that he may have acted similarly or accordingly on the day of the incident. The evidence is merely offered as evidence of an intentional pattern of abusive behavior. Whether any other alleged crimes, wrongs, or acts have been committed is for you to determine.
The jury found Dolson guilty on three counts of rape and recommended sentences of forty years on each count to run concurrently. The circuit court imposed the sentence recommended by the jury. This appeal timely followed.
II. Standard of Review
This court considers whether a circuit court has committed a manifest abuse of discretion when reviewing issues that turn on Rules 403 and 404 as follows:
Rule 404(b) of the Arkansas Rules of Evidence provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Thus, there is a general rule excluding evidence of a defendant's prior acts, but the rule also provides an exemplary, but not exhaustive, list of exceptions to that rule. Hamm v. State , 365 Ark. 647, 232 S.W.3d 463 (2006). Evidence is not admissible under Rule 404(b) simply to show a prior bad act. Laswell v. State , 2012 Ark. 201, 404 S.W.3d 818. Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Vance v. State , 2011 Ark. 243, 383 S.W.3d 325.
Pursuant to Rule 403 of the Arkansas Rules of Evidence, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence offered by the State is often likely to be prejudicial to the accused, but the evidence should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. Chunestudy v. State , 2012 Ark. 222, 408 S.W.3d 55.
The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, and we will not reverse absent a showing of manifest abuse of discretion. Dimas-Martinez v. State , 2011 Ark. 515, 385 S.W.3d 238. Likewise, the balancing mandated by Rule 403 is also a matter left to a circuit court's sound discretion, *904 and an appellate court will not reverse the circuit court's ruling absent a showing of manifest abuse. Croy v. State , 2011 Ark. 284, 383 S.W.3d 367. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Lard v. State , 2014 Ark. 1, 431 S.W.3d 249 ; Craigg v. State , 2012 Ark. 387, 424 S.W.3d 264.
Turner v. State , 2018 Ark. App. 5, at 13-14, 538 S.W.3d 227, 238.
III. Rule 404(b)
With these principles in mind, we turn to Dolson's argument that he did not receive a fair trial because the State was allowed to present evidence that he aided or participated with his live-in girlfriend when her children were left at home alone locked in a filthy room. He contends that the evidence regarding the conditions of the house and room where the children were locked was irrelevant under Arkansas Rules of Evidence 401 and 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2017). Evidence that is not relevant is not admissible. Ark. R. Evid. 402 (2017).
Dolson argues that children being locked in a filthy room is evidence of abuse and neglect, but it is marginal to support (1) any element of rape; (2) any inference that could be drawn toward an element of rape; or (3) any assistance in evaluating the other evidence in the case. See John Wesley Hall, Trial Handbook for Arkansas Lawyers § 22:7 (2006). Dolson cites Newman v. State , 327 Ark. 339, 344, 939 S.W.2d 811, 814 (1997), wherein questions to a drug-task-force agent about the generalities of drug arrests and the task force's practices were deemed irrelevant. The supreme court held that a trial court has wide latitude to impose reasonable limits on cross-examination based on concerns about confusion of issues or interrogation that is only marginally relevant. Id. Dolson argues that the evidence presented by the State regarding the conditions of the house and locking the children in a room was marginally relevant to the charges against him.
Dolson contends that this same evidence only served to put him on trial for being a bad person because he was involved in the mistreatment of his girlfriend's children and that to allow the evidence was a violation of Rule 404(a) and (b). He cites Akins v. State , 330 Ark. 228, 955 S.W.2d 483 (1997), wherein the Arkansas Supreme Court held that evidence of a prior rape was insufficiently similar to the rape with which the defendant was charged and it should not have been admitted.[2] Dolson argues that to an unacceptable extent, he faced trial for the uncharged misdemeanor offense of endangering the welfare of a minor, which already had been addressed at the district court. He claims that two witnesses at trial testified exclusively and in detail about the conditions in the room in which the children sometimes had been confined. He claims that roughly one-third of the trial transcript is devoted to testimony on the conditions of the room. He argues that the State expended considerable effort to create a persisting image in the jurors' minds about a misdemeanor offense to which he had already pleaded *905 guilty and that this was in violation of Rule 404(b).
Dolson contends that the circuit court erroneously permitted the State to obtain a conviction for bad character. He claims that the State conveyed the message that only a person of bad character would permit children to have been placed in the conditions that were described, and a bad person like this one is more likely a rapist. Dolson cites the dissent in Lindsey , supra , in which Justice Newbern stated,
To say that Mr. Lindsey was guilty of endangering the health of his child by allowing her to contract trench foot is relevant to the charge that he raped her can only be based upon the contention that it demonstrates he is a bad man, a person of bad character, or a person with a propensity to commit one crime because he has committed another.... [T]hat is what the rule [404(b) ] disallows.
Lindsey , 319 Ark. at 143, 890 S.W.2d at 590 (Newbern, J., dissenting).
Dolson attempts to distinguish Lindsey , where the supreme court held that a defendant's neglect of his daughter, who developed the medical condition of trench foot, was relevant in his trial for raping his daughter. He contends that the court noted that the parent/child relationship existed between the malefactor and the victim. Lindsey , 319 Ark. at 140, 890 S.W.2d at 588. The defendant in Lindsey also claimed that he was a fit parent. Id. at 140-41, 890 S.W.2d at 589. Dolson argues here that he was not the parent of his accusers and there was no testimony that either of the child witnesses developed a serious medical condition. He argues that their mother, not he, owed the children a parent's duties. Nevertheless, he testified that he had contributed to their financial support, often working double shifts at his job.
Dolson also attempts to distinguish Clem v. State , 351 Ark. 112, 90 S.W.3d 428 (2002), wherein the defendant was convicted of rape, and the Arkansas Supreme Court upheld the conviction, holding that there had been no abuse of discretion by admitting photographs and testimony that depicted deplorable living conditions and that sexually explicit posters were displayed in the home. Dolson contends that the medical signs of trauma in the minor victims in Clem distinguishes it from the instant case, in which forensic examinations yielded no medical signs of trauma.
We hold that Clem and Lindsey are squarely on point and permit admission of the evidence under Rule 404(b). Evidence of squalid living conditions in which a rape defendant kept his child victims is admissible under Rule 404(b) because such evidence demonstrates a pattern of intentional neglect of the children's well-being. See Clem , supra ; Lindsey, supra.
In Lindsey , the court explained:
We have no hesitancy in concluding that permitting an eight-year-old child to develop a severe case of trench foot is a form of neglect by the parent and that the neglect of a child's physical needs is necessarily a form of abuse. Hence, we believe that a father's perpetration of child abuse by neglect is relevant to a case of sexual abuse against that same child, when both forms of abuse are occurring at the same time. Such evidence is pertinent in that it establishes an intentional pattern of abusive behavior on the part of the parent toward the child-the first by neglecting her basic hygienic needs and the second by soliciting her to engage in sexual activity. A contemptible lack of caring for a child's essential healthcare needs easily intertwines with sexual abuse of the child. Both forms of abuse are intentional and evidence lack of care, concern, and respect for the child's well-being.
*906 Lindsey , 319 Ark. at 139, 890 S.W.2d at 588. The plurality opinion's analysis in Lindsey was adopted in Clem , where the supreme court held,
The reasoning outlined in Lindsey is applicable to the case now before us. We conclude that the sexually explicit posters on the wall and the deplorable living conditions of the trailer, including a room crawling with roaches and a bed covered in feces, was relevant evidence because it established a pattern by appellant of intentionally neglecting his children's well-being. We further conclude that this evidence establishing an intentional neglect of his children's well-being was relevant to the consideration of whether appellant sexually abused his children. Further, we conclude that the relevant evidence was more probative than prejudicial. Accordingly, the trial court properly admitted the evidence.
Clem , 351 Ark. at 123, 90 S.W.3d at 434.
The circuit court did not abuse its discretion by admitting the evidence of the conditions of the home where Dolson had lived with the children. The neglect occurred during the same time period that he was committing multiple rapes against each child. As in both Clem and Lindsey , the evidence demonstrated an established pattern of Dolson's intentional neglect of his victims' well-being. Dolson admitted that he and Barnes had enforced their practice of trapping the children in a room since April 2015, which was three months before the police discovered the abuse. The evidence that Dolson raped TB in exchange for food and that the children were kept in a locked room more strongly links the Rule 404(b) evidence to the charged crime in this case than in Clem and Lindsey . Further, the cases are not distinguishable from the instant case because Dolson is not the children's father. The record shows that Dolson acted consistently with a person who considered himself to be in a familial relationship with the children.
IV. Rule 403
Dolson argues that after the circuit court had made its Rule 404(b) determination, it was mandatory for the court to scrutinize the admissibility of other-bad-acts evidence under the unfair prejudice portion of Rule 403. See Price v. State , 268 Ark. 535, 539, 597 S.W.2d 598, 600 (1980) (holding that because an objection to the admission of other-crimes evidence inherently raises an issue of prejudice, it is mandatory for the circuit court to also review the objections under the evidentiary standards prescribed by Rule 403 ). He argues that the circuit court abused its discretion by failing to balance the probative value of the evidence against unfair prejudice to him.
Dolson contends that he raised the Rule 403 issue in his motion in limine and again during the colloquy between the circuit court, the State, and defense counsel. He argues that the circuit court failed to mention Rule 403"explicitly or by implication" and that the circuit court did not mention balancing probative value against unfair prejudice as required. Dolson claims that the circuit court focused solely on the relevance issues embodied in Rule 404(b).
We hold that the issue is not preserved for appellate review. It was Dolson's burden to obtain a ruling on Rule 403. As Dolson argues, the circuit court failed to mention Rule 403 and did not mention balancing probative value against unfair prejudice. Because Dolson did not obtain a ruling, the point is not preserved. See, e.g. , Hortenberry v. State , 2017 Ark. 261, 526 S.W.3d 840.
Affirmed.
Abramson and Murphy, JJ., agree.

Dolson had also been charged with one count of sexual indecency with a child, Ark. Code Ann. § 5-14-110(a)(1)(B) (Repl. 2013). The information was amended on August 9, 2017, to exclude the sexual-indecency charge.

The case was reversed on other grounds, but the supreme court held that if the Rule 404(b) issue had been preserved by proper objection, the evidence of the prior rape should have been excluded. Akins , 330 Ark. at 234, 955 S.W.2d at 486-87.