Cite as 2020 Ark. 72

# SUPREME COURT OF ARKANSAS
No. CR-19-319

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** February 20, 2020 |
| HEATH MABRY | | |
| | APPELLANT | |
| | | APPEAL FROM THE GREENE |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. CR-17-333] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BARBARA HALSEY, |
| | | JUDGE |
| | | |
| | | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Heath Mabry appeals his conviction in the Greene County Circuit Court of six counts of rape. Mabry was sentenced to life imprisonment for each count, with the sentences to be served consecutively. For reversal, Mabry argues that the circuit court erred in denying his motion for a directed verdict, in making three evidentiary rulings, and in denying his motion for a mistrial. Because Mabry was sentenced to life imprisonment, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2019). We affirm.

On May 25, 2017, the State charged Mabry by felony information with six counts of rape in violation of Arkansas Code Annotated section 5-14-103(a)(4) (Repl. 2013), based on the allegation that Mabry had engaged in sexual intercourse or deviate sexual activity

with a minor and that he was the minor's guardian. The State later amended the information to additionally charge Mabry with six counts of rape pursuant to Arkansas Code Annotated section 5-14-103(a)(1), based on the allegation that he had engaged in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Prior to trial, the State filed a motion in limine, seeking an order to admit testimony from M.C., J.H., T.C., M.W., A.H., and K.W. pursuant to the "pedophile exception" to Rule 404(b) of the Arkansas Rules of Evidence. At a hearing, the circuit court determined that testimony from each of the proposed witnesses would be allowed and granted the motion.

The case proceeded to trial on December 11-13, 2018. C.C., who was sixteen years old at the time of the trial, testified that he lived with his mother and Mabry in Paragould in late 2016 and early 2017. According to C.C., the three had lived together off and on since he was about seven years old. C.C.'s older brother also lived with them for much of that time, but he moved out permanently in either September or November 2016. C.C. testified that although his mother and Mabry never married, he called Mabry his stepfather because he had been part of his life for as long as he could remember. C.C. recounted that he identified Mabry as his stepfather to nonfamily members and that Mabry supported the household financially. C.C. recalled that Mabry made all major decisions and disciplined him. After C.C.'s brother left the home, Mabry and Clarissa Cooley, C.C.'s mother, began having sex in C.C.'s presence. Eventually, this progressed to C.C. being involved in the sexual activity. According to C.C., he performed oral sex on Mabry between six and twelve

2

times; and engaged in sexual activity with his mother. C.C. testified that Mabry had threatened his and his brother's lives to manipulate his mother. C.C. further knew that Mabry possessed a revolver, other guns, and several antique swords. Despite his lengthy relationship with Mabry, C.C. could not identify him in the courtroom.[1]

Clarissa testified that she had pled guilty to rape and was serving a thirty-five-year sentence because of her activities with C.C. She recalled seeing C.C. performing oral sex on Mabry twice. Clarissa stated that Mabry recorded videos of the incidents and threatened to put them on the internet if she ever told anyone. According to Clarissa, Mabry was like a father figure to C.C. and his brother. She testified that Mabry "made all the decisions" and disciplined everybody. Clarissa said that on one occasion, Mabry threatened to throw C.C. out of the house if C.C. did not do what he said. Clarissa also said that Mabry threated to rape C.C. if she ever went to the police. Although he was a significant part of C.C.'s life, Mabry was not allowed to pick C.C. up from school because he was not his father. Clarissa also testified that the Arkansas Department of Human Services was involved in a 2014 case with her, her children, and Mabry, and that the result of the DHS investigation was that Mabry was no longer allowed to physically discipline the children. However, Mabry could still discipline them in other ways such as grounding them.

---

[1]Other testimony indicated that Mabry had lost a significant amount of weight and looked dramatically different than he did at the time of the offenses. Mabry's identity was not in dispute.

J.H., Clarissa's daughter, was twenty-three years old at the time of the trial and testified that she lived with her father, James Holland, when she was ten years old. When J.H. visited her mother and Mabry in Paragould, Mabry came into her room and penetrated her vaginally with his fingers. J.H. considered Mabry her stepfather simply because he had been in a relationship with her mother for a significant period of time. A.H., who was twenty-seven at the time of the trial, also testified. According to A.H., Mabry was a friend of her parents, and she stayed the night at Mabry's home. She was about five years old at the time, and Mabry had a son about her age. On one occasion, A.H. went to sleep in Mabry's son's room and awoke in Mabry's bed. A.H. testified that Mabry touched her vagina with his hand and performed oral sex on her.

At the close of the State's case, Mabry moved for a directed verdict and argued that the State failed to prove all the elements of the offense of rape. Mabry also moved for a mistrial and argued that the State's Rule 404(b) evidence did not adhere to the "pedophile exception." The circuit court denied both motions. Mabry did not present any witnesses and renewed his motion for a directed verdict at the close of the evidence. The circuit court denied the motion. The jury returned a general verdict finding Mabry guilty on all six counts of rape and sentenced him to life in prison on each count. The circuit court entered a judgment and commitment order reflecting the jury's verdict and sentence, and Mabry filed a timely appeal.

Mabry first argues that the circuit court erred when it denied his motion for a directed verdict. Specifically, Mabry contends that the circuit court erred when it determined that he was a "guardian" for purposes of Arkansas Code Annotated section 5-14-103(a)(4). An appeal from the denial of a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence. *Howard v. State*, 2016 Ark. 434, 506 S.W.3d 843. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*. In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Fletcher v. State*, 2018 Ark. 261, 555 S.W.3d 858.

A person commits the offense of rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1). A person also commits the offense of rape if he engages in sexual intercourse or deviate sexual activity with another person if the person is a minor and the actor is the victim's guardian. Ark. Code Ann. § 5-14-103(a)(4). "Sexual intercourse" means "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5–14–101(11). "Deviate sexual activity" means any "act of sexual gratification involving . . . [t]he penetration, however slight, of the anus or mouth of a person by the penis of another

person; or . . . [t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person[.]" Ark. Code Ann. § 5-14-101(1). "Forcible compulsion" means "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person [.]" Ark. Code Ann. § 5-14-101(2). "Guardian" includes "any person who by virtue of a living arrangement is placed in an apparent position of power or authority over a minor[.]" Ark. Code Ann. § 5-14-101(3). A "minor" is "a person who is less than eighteen (18) years of age[.]" Ark. Code Ann. § 5-14-101(6). This court has consistently held that the testimony of a rape victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Christian v. State*, 2013 Ark. 86.

The evidence presented at trial, viewed in the light most favorable to the State, provides substantial evidence to support the verdict. C.C. testified that he performed oral sex on Mabry between six and twelve times when he was fourteen years old. C.C., his mother, and his brother had lived with Mabry off and on since he was about seven years old, and C.C. testified that Mabry was like a father figure to him and that he called him his stepfather. Testimony from C.C. established that Mabry supported the family financially and decided how money was spent, that he disciplined the children, and that he made major decisions such as when the children were ready to perform any dangerous activity like mowing the lawn. Clarissa also testified that Mabry disciplined the children and told them which chores to do around the house. The testimony from C.C. and Clarissa

provides substantial evidence that Mabry was a person "who by virtue of a living arrangement is placed in an apparent position of power or authority over a minor[.]" Ark. Code Ann. § 5-14-101(3).

Mabry was also charged with rape by forcible compulsion. The jury returned a general verdict, so it is not clear if the jury found him guilty of rape of a minor when he was the minor's guardian, or rape by forcible compulsion, or both. Because both theories are legally sufficient, we may affirm the conviction if substantial evidence supports either. *Terry v. State*, 371 Ark. 50, 263 S.W.3d 528 (2007). Mabry makes no argument on appeal regarding the sufficiency of the evidence to support a conviction based on forcible compulsion, and because we conclude that substantial evidence supports the conviction on the charge of rape under section 5-14-103(a)(4), we do not address the forcible-compulsion charge.

Mabry has also identified four adverse rulings that this court should consider as part of its Arkansas Supreme Court Rule 4.3(i) review. The first three arose during Clarissa's testimony when the State's objections as to speculation, "asked and answered," and relevancy were sustained. The fourth concerns the circuit court's overruling of Mabry's motion for a mistrial based on testimony from J.H., which was allowed under the "pedophile exception."

Mabry first notes that the State objected when Mabry's counsel asked Clarissa if C.C. would lie for her. The State argued that the question called for speculation. The

circuit court agreed and sustained the State's objection. Mabry's counsel then asked if C.C. had ever lied for her. The court again sustained the State's objection but told Mabry's counsel that he could reword the question. Counsel continued with a line of questioning about whether C.C. had lied in particular situations.

Circuit courts have broad discretion in deciding evidentiary issues, and their rulings are not reversed on appeal in the absence of an abuse of discretion. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* The circuit court did not abuse its discretion by refusing to allow speculation. Moreover, we will not reverse without a showing of prejudice. *Harris v. State*, 366 Ark. 190, 234 S.W.3d 373 (2006). Mabry has shown no prejudice because counsel was allowed to reword his question and continue with his line of questioning.

Mabry next notes that the circuit court sustained the State's "asked and answered" objection when Mabry's counsel asked Clarissa a second time if she had denied telling her sister to lie to DHS for her. A cross-examiner is given wide latitude and cannot be unduly restricted in eliciting facts that affect a witness's credibility. *McCorkle v. State*, 270 Ark. 679, 607 S.W.2d 655 (1980). However, it is within the sound discretion of the circuit court to limit the introduction of cumulative testimony. *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986). The testimony Mabry sought to elicit was already part of the record, and a

response to counsel's question would have been cumulative. Therefore, the circuit court did not abuse its discretion in disallowing the repetitive questioning.

Mabry's last evidentiary challenge is that the circuit court erroneously sustained the State's hearsay objection to his questions to Clarissa about a conversation she and Mabry had with a DHS caseworker during a 2014 case. Mabry argues that the court's ruling denied him the right to seek an explanation of a DHS report that had been referenced previously. According to Rule 801(c) of the Arkansas Rules of Evidence, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Counsel's question sought to elicit hearsay, and the circuit court did not abuse its discretion by sustaining the State's objection. Additionally, defense counsel was later able to elicit information establishing that after the DHS investigation, Mabry was no longer allowed to physically discipline the children. Accordingly, there was no prejudice. *See Harris*, 366 Ark. 190, 234 S.W.3d 373.

Finally, after the State rested and Mabry's motion for a directed verdict was denied, Mabry moved for a mistrial based on testimony offered by J.H. and A.H. Mabry argued that J.H.'s testimony involved an incident that took place about thirteen years before the incidents involving C.C., and that it is not sufficiently similar to the situation in this case because J.H. is a female and C.C. is a male. As such, Mabry argued, the testimony should not have been allowed. With respect to A.H., Mabry argued that she was not a family member but an overnight visitor. The circuit court determined that testimony from both

J.H. and A.H. was admissible and denied Mabry's motion. On appeal, Mabry argues only that the circuit court erred by allowing testimony from J.H. pursuant to the "pedophile exception."[2] Specifically, Mabry argues that he and J.H. did not have an intimate relationship and that J.H.'s testimony did not qualify for the Rule 404(b) exception. Rule 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2019). Although Rule 404(b) is the general rule, this court has long recognized a "pedophile exception" to Rule 404(b), under which the accused's prior sexual conduct with children is admissible "when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship" *Parish v. State*, 357 Ark. 260, 268, 163 S.W.3d 843, 847 (2004) (internal citations omitted). An intimate relationship is one that is close in friendship, or acquaintance, familiar, near, or confidential. *Id.* We have explained that such evidence helps to "show the depraved sexual instinct of the accused." *Id.* We have held that an incident that occurred almost twenty years prior to the charged crime was not too remote in time from the charged acts to be relevant. *Lamb v. State*, 372 Ark. 277, 275 S.W.3d 144

---

[2]Mabry has abandoned his challenge to A.H.'s testimony and we therefore do not address it. *See Holt v. State*, 2011 Ark. 391, 384 S.W.3d 498.

10

(2008). Additionally, a gender difference between the witnesses and the victim does not prevent application of the pedophile exception when the acts are similar, even if not identical. *Swift v. State*, 363 Ark. 496, 215 S.W.3d 619 (2005). The pedophile exception does not require that the victim and the accused be in the same household. *Berger v. State*, 343 Ark. 413, 36 S.W.3d 286 (2001). We have held that a child who is unrelated to the defendant and who has occasionally spent the night at the defendant's home could testify pursuant to the pedophile exception. *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998).

J.H. testified that Mabry abused her when she was about ten years old. At that time, Mabry regularly spent weekends at Clarissa's house. J.H. lived with her father but at times visited her mother. J.H. said that Mabry was "the punisher" in the household and that she considered Mabry to be her stepfather because he had been in a relationship with her mother for so long. According to J.H., Mabry engaged in inappropriate activity with her when she was spending that night with her mother and Mabry. J.H.'s testimony demonstrates that she had an intimate relationship with Mabry. Additionally, although Mabry's sexual activity with J.H. occurred about thirteen years before the trial, it was not so remote in time that J.H.'s testimony was improper. Finally, although J.H. was a female and C.C. was a male, and Mabry's actions were not identical in each instance, they were sufficiently similar to allow J.H.'s testimony pursuant to the pedophile exception. In this case, both the victim, C.C., and the witness, J.H., were children in Mabry's home, and

J.H.'s testimony was helpful to demonstrate Mabry's proclivity for sexual conduct with children. We therefore conclude that the circuit court did not abuse its discretion in allowing J.H.'s testimony pursuant to the pedophile exception or in denying Mabry's motion for a mistrial.

Because Mabry received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him as required by Arkansas Supreme Court Rule 4-3(i). No reversible error was found.

Affirmed.

HART, J., concurs in part and dissents in part.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** The allegations at issue here are condemnable, but if this court is going to affirm six separate life sentences for six separate rape convictions, then we should demand "substantial evidence" for six separate rape offenses. The evidence presented at trial met this standard with respect to only two of the six charged offenses. Those convictions can be affirmed, but beyond that, I would reverse and dismiss.

In criminal prosecutions, due process "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of *every element* of the crime with which he is charged, *beyond a reasonable doubt*." *United States v. Gaudin*, 515 U.S. 506, 510 (1995) (emphasis added). At the close of the prosecution's case, Mabry moved for a directed verdict, arguing: "The state has not proved the elements of rape on six separate occasions."

12

The circuit court denied Mabry's motion. We must review this ruling pursuant to Arkansas Supreme Court Rule 4-3(i), as Mabry received a sentence of life imprisonment (six, actually).

On appeal, we review a denial of a motion for directed verdict as though it were a challenge to the sufficiency of the evidence. *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430. In reviewing a challenge to the sufficiency of the evidence, the appellate court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Fletcher v. State*, 2018 Ark. 261, 555 S.W.3d 858.

In this case, the charging document filed by the prosecutor before trial provided as follows:

INFORMATION

Comes the Prosecuting Attorney for GREENE County, Arkansas, and in the name and by the authority of the State of Arkansas, charges Heath B Mabry with the crime(s) of RAPE as follows:

Count 1: RAPE ARK. CODE ANN. § 5-14-103. The said defendant in GREENE COUNTY, did unlawfully and feloniously between August 1, 2016 and September 14, 2016, engages [sic] in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and the actor is the victim's guardian; is the victim's uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; is the victim's brother or sister of the whole or half blood or by adoption, or is the victim's

13

nephew, niece, or first cousin, thereby committing the offense of RAPE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

Count 2: RAPE ARK. CODE ANN. § 5-14-103. The said defendant in GREENE COUNTY, did unlawfully and feloniously between August 1, 2016 and September 14, 2016, engages [sic] in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and the actor is the victim's guardian; is the victim's uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; is the victim's brother or sister of the whole or half blood or by adoption, or is the victim's nephew, niece, or first cousin, thereby committing the offense of RAPE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

Count 3: RAPE ARK. CODE ANN. § 5-14-103. The said defendant in GREENE COUNTY, did unlawfully and feloniously between August 1, 2016 and September 14, 2016, engages [sic] in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and the actor is the victim's guardian; is the victim's uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; is the victim's brother or sister of the whole or half blood or by adoption, or is the victim's nephew, niece, or first cousin, thereby committing the offense of RAPE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

Count 4: RAPE ARK. CODE ANN. § 5-14-103. The said defendant in GREENE COUNTY, did unlawfully and feloniously between August 1, 2016 and September 14, 2016, engages [sic] in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and the actor is the victim's guardian; is the victim's uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; is the victim's brother or sister of the whole or half blood or by adoption, or is the victim's nephew, niece, or first cousin, thereby committing the offense of RAPE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

Count 5: RAPE ARK. CODE ANN. § 5-14-103. The said defendant in GREENE COUNTY, did unlawfully and feloniously between August 1,

2016 and September 14, 2016, engages [sic] in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and the actor is the victim's guardian; is the victim's uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; is the victim's brother or sister of the whole or half blood or by adoption, or is the victim's nephew, niece, or first cousin, thereby committing the offense of RAPE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

Count 6: RAPE ARK. CODE ANN. § 5-14-103. The said defendant in GREENE COUNTY, did unlawfully and feloniously between August 1, 2016 and September 14, 2016, engages (sic) in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and the actor is the victim's guardian; is the victim's uncle, aunt, grandparent, step-grandparent, or grandparent by adoption; is the victim's brother or sister of the whole or half blood or by adoption, or is the victim's nephew, niece, or first cousin, thereby committing the offense of RAPE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

There appearing reasonable grounds for believing the alleged offense(s) was committed by defendant, a warrant is therefore prayed for his arrest to be issued by the court.

The charging information did not contain much detail as to the alleged conduct; it simply tracked with the language of Ark. Code Ann. § 5-14-103(a)(4), i.e., the "minor-guardian" formulation of rape, and repeats that language six times. Before trial, the prosecutor amended the information to also include the "forcible compulsion" formulation of rape. *See* Ark. Code Ann. § 5-14-103(a)(1) ("A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person . . . [b]y forcible compulsion[.]"). The jury was instructed on both formulations at trial. Each of these formulations requires the prosecution to prove, inter alia, that the defendant engaged

15

in either "sexual intercourse" or "deviate sexual activity" with the victim. "Sexual intercourse" means "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(11). "Deviate sexual activity" means an "act of sexual gratification involving . . . [t]he penetration, however slight, of the anus or mouth of a person by the penis of another person; or . . . [t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person[.]" Ark. Code Ann. § 5-14-101(1).

Under either formulation, by the prosecution's theory of this particular case, it was necessary to prove that the defendant penetrated the victim's anus or mouth with the defendant's penis. The requirement applied to all six of the charged rape offenses. Notably absent is any charge that the defendant acted as an accomplice.

As the majority notes, the apparent basis for the six rape convictions is the victim's testimony that he performed oral sex on Mabry between six and twelve times when he was fourteen years old. In response to the question, "What did he have you do," the victim responded, "He made me suck his dick." And then, in response to the question, "How many times did he make you do that," the victim responded, "Quite a bit. Six, half a dozen, a dozen. I don't . . . [.]" (Ellipsis in record.) However, the testimony elicited from the victim by the prosecutor did not get much more specific than that, and the victim could not identify Mabry in the courtroom at trial as the person who did these things. The victim did not testify as to the circumstances of specific offenses, other than generally averring that

16

they occurred many times. The lack of actual details about what happened with each offense falls short of the constitutionally required standard of guilt beyond a reasonable a doubt.

However, the victim's mother testified that she saw the victim performing oral sex on Mabry on two separate occasions. Here, we have at least some level of evidence or indicia to support the allegation that two specific rape offenses occurred. But beyond these statements, the testimony consisted mostly of generalized remarks by the prosecutor about the "six to twelve occasions that he had you perform oral sex on him" that the victim would either agree with or not, without describing a specific offense.

I am mindful that we have held that "the testimony of a rape victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape." *Christian v. State*, 2013 Ark. 86, at 2 (internal citation omitted). However, the requirement for testimony satisfying the statutory elements of rape must be applied to each charged offense. While I am obviously sympathetic to the victim's disinclination to recall these traumatic events, the constitutional demand for proof beyond a reasonable doubt as to every element of every charge must be satisfied. This can be accomplished even in the context of a rape case in which the victim is a minor. For example, in *Christian*, a case cited by the majority where the victim was far younger than the victim in this case, the prosecution was able to elicit testimony from the victim to support the four separate rape charges by tying the victim's account to each of the four residences that she shared with the

defendant. *See Christian*, 2013 Ark. 86, at 6 (Hart, J., concurring). It can be done; it simply was not in this case.

In short, we should not allow scattershot prosecutions. The constitution demands specifics. For these reasons, I concur in part and dissent in part.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.