Cite as 2021 Ark. 215

# SUPREME COURT OF ARKANSAS
No. CR-21-148

| | | |
|---|---|---|
| STANLEY WARNER | | **Opinion Delivered:** November 18, 2021 |
| | APPELLANT | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. 71CR-19-187] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE H.G. FOSTER II, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Stanley Warner appeals a Van Buren Circuit Court order convicting him of raping six-year-old M.H. and sentencing him to an enhanced sentence of life imprisonment without parole. For reversal, Warner argues that substantial evidence does not support the conviction; the circuit court abused its discretion in admitting evidence of prior bad acts under the pedophile exception; and the circuit court abused its discretion in admitting M.H.'s recorded statement. We affirm.

## I. *Facts*

Warner, whom M.H. knew as "Uncle Jeff," had lived in Clinton with M.H.; Bridget Holmes, M.H.'s mother; and Holmes's parents for approximately one week before the rape. Warner is related to the Holmes family through M.H.'s grandfather.

Investigator Thomas E. Johnson recounted the following facts in an affidavit supporting Warner's arrest warrant. On the afternoon of July 10, 2019, Holmes went to work and left M.H. in the care of her parents. That evening, M.H.'s grandmother went to bed, and he stayed up with his grandfather, who fell asleep on the couch. While his grandparents slept, Warner told M.H. to go to the back porch. There, he asked M.H. if he wanted to play a game during which M.H. would close his eyes, Warner would put something in M.H.'s mouth, and M.H. would guess what it was. According to Johnson, Warner "told the boy that it would be like a lollipop, but it didn't taste the same but that if he kept licking and sucking on it that he would get some juice out of it." M.H. closed his eyes, opened his mouth, and leaned toward Warner, who placed his penis in his mouth. Warner "told him not to bite it because it was covered with a chemical and would taste bad." The affidavit states that M.H. peeked and saw Warner's penis in his mouth. Warner suddenly removed his penis from M.H.'s mouth and went inside to find that M.H.'s mother was home.

Johnson interviewed Holmes, who stated that she had returned home from work, parked her car, and talked to her boyfriend on the phone. When she got out of her car, a motion light turned on. Holmes told Johnson that Warner "peeked around the corner from the back porch and said that he didn't even hear her pull up." According to Johnson, Holmes went inside the residence, placed her dinner in the microwave, and saw Warner and M.H. walk inside from the back porch. She stated that her son "had a strange blank look on his face," so she took him to her room and asked what had happened. Holmes told the officer that M.H. revealed that Warner "had him play a tasting game" and that Warner had put his

2

penis in M.H.'s mouth. Holmes and M.H.'s grandparents kicked Warner out of the house and reported the incident to law enforcement.

During a forensic interview at the Child Advocacy Center (CAC) in Conway, M.H. gave a recorded statement to Karli Potratz, a CAC forensic interviewer, with Johnson present. Johnson proceeded to the home of Warner's wife where he located Warner, took him into custody, and transported him to the sheriff's office. During an interview, Warner admitted being on the back porch with M.H. while the grandparents slept, but he claimed that he only stuck his thumb in the boy's mouth.

On September 11, 2019, the State charged Warner as a habitual offender with one count of rape, in violation of Arkansas Code Annotated section 5-14-103 (Supp. 2017), for engaging in sexual intercourse or deviate sexual activity with someone less than fourteen years of age. Prior to trial, the State moved to introduce evidence under the pedophile exception to Rule 404(b) of the Arkansas Rules of Evidence for purposes of proving Warner's proclivity toward sex acts with young children in his family. On January 3, 2020, the State moved to admit testimony from Megan Hudson, Warner's biological daughter, that he had engaged in multiple acts of sexual abuse from the time that she was five or six years old until the age of thirteen. The State asserted that Hudson was expected to testify that the abuse began when she was around five years old with Warner exposing his penis, causing her to "play with it" and that on more than one occasion, he inserted his penis into her mouth. She also planned to testify that the sexual abuse progressed to sexual intercourse when she was thirteen years old and spending the summer with him in New York. Also on September

11, 2020, the State moved to admit testimony from Melonie Griffin, Warner's younger sister, who was sexually abused by him when she was a young girl. Griffin was expected to testify that Warner would have her "play doctor" on him and force her to touch his erect penis and "kiss down there." Warner responded that this evidence was irrelevant and highly prejudicial. The circuit court ruled that the evidence was relevant and would be admitted under the pedophile exception.

On September 17 and 18, 2020, Warner stood trial before a Van Buren County jury. M.H., who was seven years old at the time of trial, testified that when he was alone with Warner in 2019, "[h]e put his middle in my mouth." M.H. stated that he and Warner were "out back" on the porch and that it occurred at night. He stated that no one else was on the porch and that his mother had worked late. M.H. further testified that Warner told him to "close [his] eyes" and that he would "put something in [his] mouth that kind—and—if [he] sucked on it, [he] would feel some juice, and [Warner] says it's kind of like a lollipop, but don't bite it." M.H. testified that Warner told him to engage in this activity and to keep his eyes closed. He stated that he closed his eyes for "two seconds" before Warner put something in his mouth. He testified that he "peeked" by opening his eyes and saw "skin color and hair." M.H. also stated that girls do not have "middles" and circled a penis on a drawing that was introduced into evidence.

Hudson, who was thirty-three years old at the time of trial, also testified at trial. Over Warner's objection, she testified that she had lived with him "off and on" when she was five or six years old. She testified that Warner started "touching" her when she was six years old

and would ask her to touch his private area. She stated that she would touch his penis, and in turn, he touched her vagina and breasts. She testified that the sexual abuse progressed to oral sex when she was older and that he would use his tongue and fingers on her vagina. She also testified that he had sexual intercourse with her when she was eleven or twelve years old. She stated that this sexual abuse had occurred more than twenty years ago. The State then offered, and the circuit court received into evidence (1) certified records of rape and incest convictions from Arkansas entered in 2002; (2) certified records of two counts of sodomy from New York entered in 2000; and (3) a transcript of Warner's sworn statement given during the entry of his guilty plea to rape and incest in 2002.

Griffin also testified over Warner's objection. She stated that her brother, who was seventeen years older, began sexual contact with her when she was seven or eight years old. She testified that she and Hudson, her niece, would get on the bed with Warner, who was naked. He would ask the girls to "play doctor" on his private parts. Griffin stated that Hudson is four years younger. Griffin stated that "playing doctor" included "running toys . . . [u]p and down his penis" and "kiss[ing] boo-boos . . . [o]n his penis." Griffin also testified that Warner would sit naked behind her while brushing her hair and "try to push it up and underneath [her] bottom." She did not report these incidents, which occurred in the early to mid-1990s, to law enforcement.

At trial, the circuit court conducted an in camera hearing on the State's motion to introduce M.H.'s recorded statement, pursuant to Rule 803(25) of the Arkansas Rules of Evidence. After hearing counsel's arguments and reviewing a DVD of the recorded

5

statement, the circuit court ruled that M.H.'s recorded statement would be admitted into evidence, and the jury viewed it during Potratz's testimony. The State presented other testimony from Holmes; Johnson; Lindsey Heflin, a forensic DNA examiner from the Arkansas crime lab; and Deanna Griffin, Holmes's mother.

At the close of the State's case, Warner moved for a directed verdict and argued that the State failed to prove the elements of the rape offense. Warner also renewed his objection to M.H.'s recorded statement under Rule 803(25). The circuit court denied both motions. Warner did not present any witnesses and renewed his motion for a directed verdict at the close of the evidence. The circuit court denied the motion. After deliberations, the jury convicted Warner of one count of rape and sentenced him to an enhanced sentence of life imprisonment without the possibility of parole. On September 28, 2020, the circuit court entered a sentencing order reflecting the jury's conviction and sentence. Warner timely filed his appeal.

## II. *Rape Conviction*

For his first point on appeal, Warner argues that the circuit court erred in denying his motion for directed verdict and contends that substantial evidence does not support his rape conviction "when the testimony was vague[,] and the victim gave conflicting answers."

An appeal from the denial of a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Mabry v. State*, 2020 Ark. 72, at 5, 594 S.W.3d 39, 43. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence. *Id.*, 594 S.W.3d at 43. Substantial evidence is evidence

6

that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 594 S.W.3d at 43. In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Id.*, 594 S.W.3d at 43.

A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A). "Deviate sexual activity" means any "act of sexual gratification involving . . . [t]he penetration, however slight, of the anus or mouth of a person by the penis of another person[.]" Ark. Code Ann. § 5-14-101(1)(A) (Supp. 2017). A "minor" is "a person who is less than eighteen (18) years of age[.]" Ark. Code Ann. § 5-14-101(6). This court has consistently held that the testimony of a rape victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Dominguez v. State*, 2020 Ark. 286, at 6. This is equally true when the victim is a child. *Id.*

Considering the evidence adduced at trial, seven-year-old M.H. testified that Warner took him to the back porch and suggested that they play a game of putting something in M.H.'s mouth. When M.H. closed his eyes, Warner "put his middle in [M.H.'s] mouth," and M.H. saw "skin color and hair." M.H. used the word "middle" to describe Warner's penis. Standing alone, M.H.'s testimony provides substantial evidence to support the rape conviction. Further, when asked if Warner's penis felt cold, M.H. replied both "yes" and "no" during his testimony. But this court has held that any inconsistencies in the victim's

7

testimony are for the jury to resolve. *Gillard v. State*, 366 Ark. 217, 222, 234 S.W.3d 310, 313 (2006). Thus, we conclude that the victim's testimony was sufficient to prove that Warner was guilty of rape under section 5-14-103. Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports the jury's verdict.

III. *Pedophile Exception*

Next, Warner argues that the circuit court erred by admitting testimony by Hudson and Griffin under the pedophile exception to Rule 404(b). Warner asserts the prior acts that they described were not substantially similar to those in the instant case and were too remote in time. He also contends that the evidence was highly prejudicial and should have been excluded under Rule 403.

Arkansas Rule of Evidence 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b). The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the circuit court and will not be disturbed absent a manifest abuse of discretion. *Flanery v. State*, 362 Ark. 311, 314, 208 S.W.3d 187, 189 (2005).

We have recognized a separate "pedophile exception" to the general rule that evidence of a defendant's prior bad acts cannot be used to prove that the defendant committed the charged crime. *Hortenberry v. State*, 2017 Ark. 261, at 9, 526 S.W.3d 840, 846. The pedophile

exception allows the State to introduce evidence of a defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with the person or class of persons with whom the defendant has an intimate relationship. *Id.*, 526 S.W.3d at 846–47. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.* at 10, 526 S.W.3d at 847.

We have also held that an incident that occurred almost twenty years prior to the charged crime was not too remote in time from the charged acts to be relevant. *Mabry*, 2020 Ark. 72, at 10, 594 S.W.3d at 46. Additionally, a gender difference between the witnesses and the victim does not prevent application of the pedophile exception when the acts are similar or identical. *Id.* at 10–11, 594 S.W.3d at 46. The pedophile exception does not require that the victim and the accused be in the same household. *Id.* at 11, 594 S.W.3d at 46.

Warner's first argument under Rule 404(b) is that the testimony of Hudson and Griffin should have been excluded because there were not enough similarities between their testimony and M.H.'s allegations. In light of our precedent, the fact that the girls and M.H. differ in gender is of no moment. Here, the victims were similar in age—around five to seven years of age—when the sexual abuse happened. At that time, Hudson and Griffin were young members of Warner's family, and in this instance, M.H. called him "Uncle Jeff" and is related to Warner through his grandfather. More significant, all the victims testified that Warner first forced them to perform oral sex through playing certain games that he had

9

created. In light of these similarities, we hold that the circuit court did not abuse its discretion in allowing this testimony.

Warner also argues that the incidents described by Hudson and Griffin took place approximately twenty years ago and were too remote in time from the abuse alleged by M.H. This argument is unpersuasive in light of our prior case law allowing testimony regarding alleged prior sexual conduct "even when a significant time gap exists." *Allen v. State*, 374 Ark. 309, 318, 287 S.W.3d 579, 585–86 (2008) (quoting *Flanery*, 362 Ark. at 315, 208 S.W.3d at 190). More specifically, we have permitted evidence of conduct occurring nearly twenty years prior to the charged conduct. *Allen*, 374 Ark. at 318, 287 S.W.3d at 585. Thus, in light of this precedent, we hold that this testimony was relevant to demonstrate Warner's intent and was not too remote in time from the rape perpetrated on M.H.

Warner further contends that the evidence at issue should have been excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice. Here, there were enough similarities between the testimony of Hudson, Griffin, and M.H. to make this evidence probative on the issue of Warner's sexual impulses acted out on young family members. *See Flanery*, 362 Ark. at 316, 208 S.W.3d at 191. Considering the circuit court's broad discretion in admitting evidence, we hold that the circuit court properly concluded that the probative nature of this evidence was not substantially outweighed by the danger of unfair prejudice, and we affirm on this point.

IV. *Recorded Statement*

10

For his final point, Warner argues that the circuit court abused its discretion in admitting M.H.'s recorded statement pursuant to Rule 803(25). He contends that this recorded statement was not inconsistent with M.H.'s testimony at trial and therefore was inadmissible. He further asserts that the circuit court failed to find whether M.H. was competent and whether the statement offered a reasonable guarantee of trustworthiness.

Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. *Armstrong v. State*, 2020 Ark. 309, at 11, 607 S.W.3d 491, 499. Further, we will not reverse unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. *Id.*, 607 S.W.3d at 499.

Rule 803(25) of the Arkansas Rules of Evidence allows for a hearsay exception when the young victim testifies at trial and his or her in-court testimony is inconsistent with an earlier out-of-court statement. Rule 803(25) states that

> [a] statement by a child under the age of ten (10) years concerning any type of sexual offense, or attempted sexual offense, with, on, or against that child, which is inconsistent with the child's testimony and offered in a criminal proceeding, [is admissible] provided:
>
> (A) The trial court conducts a hearing outside the presence of the jury and finds that the statement possesses a reasonable guarantee of trustworthiness considering the competency of the child both at the time of the out of court statement and at the time of the testimony.

Ark. R. Evid. 803(25)(A).

In the case at bar, the circuit court stated during an in camera hearing that it was "preparing to conduct a hearing outside the presence of the jury to ascertain whether the

State would offer it possesses a reasonableness [sic] degree of trustworthiness considering the competency of the child . . . at the time of the out-of-court statement and at the time of the testimony." After reviewing the recorded statement, the circuit court made the following ruling:

> I will revisit and reconsider my determination as to whether there was inconsistent testimony offered and I find that he denied on the witness stand licking it. He denied on the witness stand being told to lick. In the statement, the video statement, he says he was told to lick and he did lick what was put in his mouth. I offer the proposition that there is a difference between licking something that is put in your mouth and not. I also offer there is a further difference between being told to lick what is put in your mouth and not being told to. Also while the witness said he was unable to identify the defendant as his uncle, cousin[,] or family. . . he never could come up with a family name for Jeff. . . . Yet on the video statement that I just saw, it is Uncle Jeff this, Uncle Jeff that, he is buying him stuff, he is buying costumes for Halloween . . . and things of that nature. That is clearly inconsistent with the testimony he offered on the witness stand; therefore . . . I find that the testimony given at the core of that trial yesterday on the stand was inconsistent with the statement . . . and I believe that the fact that the statement was given at the Child Advocacy Center and most of the guarantees of – I don't know, purity of statement appeared to be in place on the video.

We agree with the circuit court's ruling to admit M.H.'s prior recorded statement based on the inconsistencies articulated by the circuit court in its ruling. Because of these inconsistencies between M.H.'s recorded statement and his testimony at trial, we conclude that the circuit court did not abuse its discretion in admitting the recorded interview of M.H. To the extent that Warner contends that the circuit court did not rule on M.H.'s competency, we conclude that the circuit court expressly noted its consideration of M.H.'s competency in evaluating the "reasonable guarantee of trustworthiness" of the prior recorded

statement. Ark. R. Evid. 803(25). Thus, we hold that the circuit court properly admitted M.H.'s recorded statement pursuant to Rule 803(25). Accordingly, we affirm.

V. *Rule 4-3(a)*

In compliance with Arkansas Supreme Court Rule 4-3(a), we have examined the record for all objections, motions, and requests made by either party that the circuit court decided adversely to the appellant. We find no prejudicial error.

Affirmed.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.